Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLAM ABEED, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION, KOJI SATO, YOICHI MIYAZAKI, AKIO TOYODA, and KENTA KON <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

Plaintiff Islam Abeed ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Toyota Motor Corporation ("Toyota" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Toyota securities between June 23, 2022 and June 2, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

1

misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Toyota securities during the Class Period and was economically damaged thereby.

7.     Defendant Toyota is a Japanese car company.

8.     Toyota is incorporated in Japan and its head office located at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan. Its American headquarters are located at 6565 Headquarters Drive, Plano, Texas 75024. Toyota has offices at 1630 W. 186th St. Gardena, California 90248-3807.

9.     Toyota American Depositary Shares ("ADS") trade on the New York Stock Exchange (the "NYSE") under the ticker symbol "TM"

10.     Defendant Koji Sato ("Sato") has served as the Company's Chief Executive Officer ("CEO") since April 2023.

11.     Defendant Yoichi Miyazaki ("Miyazaki") has served as the Company's Chief Financial Officer ("CFO") since April 2023. He also serves as Chief Competitive Officer and on the Board of Directors (the "Board")

12.     Defendant Akio Toyoda ("Toyoda") is the Chairman of the Company's Board of Directors and was previously a member of the Board.

13.     Defendant Kenta Kon ("Kon") served on the Board through April 1, 2023.

2

14.     Defendants Sato, Miyazaki, Toyoda and Kon are collectively referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

16.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Toyota under *respondeat superior* and agency principles.

18.     Defendant Toyota and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

3

**Materially False and Misleading Statements Issued During the Class Period**

19.     On June 23, 2022, the Company filed with the SEC its Annual Report on Form 20-F for the fiscal year ended March 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Toyoda and Kon attesting to the accuracy of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

20.     The 2022 Annual Report contained the following risk disclosure regarding the Company's brand image:

> ***Toyota's success is significantly impacted by its ability to maintain and develop its brand image.***
>
> In the highly competitive automotive industry, it is critical to maintain and develop a brand image. In order to maintain and develop a brand image, it is necessary to further increase customers' confidence by providing safe, high-quality products that meet customer preferences and demand. If Toyota is unable to effectively maintain and develop its brand image as a result of such reasons as its inability to provide safe, high-quality products or as a result of the failure to promptly implement safety measures such as recalls when necessary, vehicle unit sales and/or sale prices may decrease, and as a result revenues and profits may not increase as expected or may decrease, adversely affecting its financial condition and results of operations.

21.     The statement in ¶ 20 was materially false and misleading because it omitted that malfeasance relating to certification of the Company's cars, including for safety, posed a risk to its brand.

22.     The 2022 Annual Report contained the following risk regarding government regulations and actions:

> ***The automotive industry is subject to various governmental regulations and actions.***
>
> The worldwide automotive industry is subject to various laws and governmental regulations including those related to vehicle safety and environmental matters such as emission levels, fuel economy, noise and

4

pollution. In particular, automotive manufacturers such as Toyota are required to implement safety measures such as recalls for vehicles that do not or may not comply with the safety standards of laws and governmental regulations. In addition, Toyota may, in order to reassure its customers of the safety of Toyota's vehicles, decide to voluntarily implement recalls or other safety measures even if the vehicle complies with the safety standards of relevant laws and governmental regulations. If Toyota launches products that result in safety measures such as recalls (including where parts related to recalls or other measures were procured by Toyota from a third party), Toyota may incur various costs including significant costs for free repairs. Many governments also impose tariffs and other trade barriers, taxes and levies, or enact price or exchange controls. Toyota has incurred significant costs in response to governmental regulations and actions, including costs relating to changes in global trade dynamics and policies, and expects to incur such costs in the future. ***Furthermore, new legislation or regulations or changes in existing legislation or regulations may also subject Toyota to additional costs in the future. If Toyota incurs significant costs related to implementing safety measures or responding to laws, regulations and governmental actions, Toyota's financial condition and results of operations may be adversely affected***.

(Emphasis added).

23.     The statement in ¶ 22 was materially false and misleading because it understated the risk of government action affecting the Company, considering its malfeasance relating to certification of its cars.

24.     The 2022 Annual Report contained the following risk disclosure regarding litigation risk:

As an automotive manufacturer, Toyota may become subject to legal proceedings in respect of various issues, including issues relating to the topics discussed in "—The automotive industry is subject to various governmental regulations and actions," as well as product liability and infringement of intellectual property. Toyota may also be subject to legal proceedings brought by its shareholders and governmental proceedings and investigations. Toyota is in fact currently subject to a number of pending legal proceedings and government investigations. A negative outcome in one or more of these pending legal proceedings could adversely affect Toyota's reputation, brand image, financial condition and results of operations. For a further discussion of governmental regulations, see

"Information on the Company — Business Overview — Governmental Regulation, Environmental and Safety Standards" and for legal proceedings, please see "Information on the Company — Business Overview — Legal Proceedings."

25.    The statement in ¶ 24 was materially false and misleading because it understated the Company's litigation risk, considering its malfeasance relating to certification of its cars.

26.    The 2022 Annual Report contained the following statement regarding malfeasance at Hino Motors, Ltd. ("Hino"), of which Toyota owns a majority stake:

On March 4, 2022, Hino Motors, Ltd., a publicly traded Japanese company that produces and sells commercial trucks and buses, and of which Toyota owns 50.18% of the voting interests as of March 31, 2022, *disclosed that it had voluntarily commenced an investigation into potential issues regarding emissions performance and certification in the North American and Japanese markets*, and that it has reported such issues to and is cooperating with the relevant authorities, including the Japanese Ministry of Land, Infrastructure, Transport and Tourism ("MLIT") and the U.S. Department of Justice. Hino announced that, through such investigation, *it identified past misconduct in relation to its applications for certification concerning the emissions and the fuel economy performance of certain of its engines for the Japanese market*. Accordingly, Hino disclosed that it decided to suspend the sale of such engine models and their corresponding vehicles in Japan and announced on March 25, 2022 a recall of vehicles equipped with one of the engines. On March 29, 2022, MLIT announced that it had revoked certain of the "type approvals" (that is, approvals that exempt new vehicles or vehicles with certain equipment from individual testing by government inspectors prior to sale) and the fuel consumption ratings relating to such engine models. Investigations by governmental authorities related to these matters could result in the imposition of civil or criminal penalties, fines or other sanctions, or litigation. Toyota cannot predict the scope, duration, or outcome of these matters at this time.

(Emphasis added).

27.     The statement in ¶ 26 was materially false and misleading because it gave the impression that malfeasance relating to certification of the Company's vehicles was isolated to past misconduct at Hino.

28.     On June 30, 2023, the Company filed with the SEC its Annual Report on Form 20-F for the fiscal year ended March 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to SOX signed by Defendants Sato and Miyazaki attesting to the accuracy of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

29.     The 2023 Annual Report contained the following statement:

**Toyota's success is significantly impacted by its ability to maintain and develop its brand image and reputation.**

In the highly competitive automotive industry, it is critical to maintain and develop a brand image and reputation. In order to do so, it is necessary to further increase stakeholders' confidence by ensuring that the Toyota group and its suppliers thoroughly comply with laws and regulations, provide safe, high-quality products that meet customer preferences and demand, as well as timely and appropriately disseminate information to stakeholders. It is also becoming increasingly important for companies to contribute to sustainability.

However, the Toyota group may not be able to ensure that it or its suppliers do so in all cases. Concerns regarding product safety or our product safety validation processes, whether raised internally, by regulators, or consumer advocates, can lead to product delays, recalls, lost sales, regulatory investigations, legal claims that cause reputational damage. **For example, on March 4, 2022, Hino Motors, Ltd. ("Hino"), a consolidated subsidiary of Toyota, confirmed and announced misconduct in relation to its applications for certification concerning the emissions and the fuel economy performance of certain of its engines for the Japanese market**. Additionally, **Daihatsu Motor Co., Ltd. ("Daihatsu"), a consolidated subsidiary of Toyota, confirmed and announced misconduct in relation to its applications for certification concerning safety tests of certain of its vehicles for the overseas market on April 28, 2023 for vehicles developed**

7

*by Daihatsu*. See "Item 4. Information on the Company — 4.B Business Overview — Selected Initiatives" for further discussion of these and related matters. In addition, actual or perceived failures on the part of Toyota or its suppliers to contribute to sustainability or to meet certain sustainability-related goals or objectives, including those relating to climate change or the protection of human rights in Toyota's supply chain, may also harm Toyota's reputation. Any insufficient measures taken by the Toyota group or its suppliers to maintain and develop Toyota's brand image and reputation may have an adverse effect on Toyota's financial condition and results of operations.

(Emphasis added).

30.     The statement in ¶ 29 was materially false and misleading because it omitted that Toyota itself had improperly submitted data as part of the Japanese government's certification process, in addition to two of its subsidiaries.

31.     The 2023 Annual Report contained the following statement:

***Misconduct of Hino and Daihatsu in Relation to their Applications for Certification***

***On March 4, 2022, Hino, a consolidated subsidiary of Toyota, announced that it identified past misconduct in relation to its applications for certification concerning emissions and the fuel economy performance of its vehicle engines for the Japanese market***. Hino subsequently received an investigation report from a special investigation committee consisting of outside experts concerning this matter. Hino also was subject to an on-site inspection from the Ministry of Land, Infrastructure, Transport and Tourism ("MLIT"), and received a corrective action order from it. On October 7, 2022, Hino submitted a recurrence prevention report to MLIT. To clarify management responsibility regarding this matter, Hino decided to have four persons who were directors or senior managing officers resign, reduce the remuneration of directors, and request the voluntary return of part of the remuneration of certain past representative directors. Further, Hino formulated and announced "Three Reforms," namely reforms to management, corporate culture and vehicle manufacturing, to prevent future misconduct. Hino is committed to addressing this issue head on and living out with renewed intent its corporate mission: "We make a better world and future by helping people and goods get where they need to go." See "Item 4. Information on the Company — 4.B Business Overview — Legal

8

Proceedings" for a discussion of related legal proceedings, including government investigations and actions.

*Furthermore, on April 28, 2023, Daihatsu announced and disclosed that it had committed procedural irregularities in approval applications for side collision tests for vehicles developed by Daihatsu destined for overseas markets. During the subsequent in-house inspection, it was newly discovered and announced that Daihatsu identified irregularities in the certification procedures for the side impact collision tests of Daihatsu ROCKY HEVs and Toyota RAIZE HEVs*. The irregularities were promptly reported to, and consultations were undertaken, with the inspection and certification authorities after they were discovered, and shipments and sales of the vehicles at issue were suspended in the countries in which approval had been granted. In addition, Daihatsu has confirmed and reported that the vehicles at issue conform to laws and regulations in in-house re-tests using proper parts. Daihatsu has established a third-party committee consisting of external experts in legal and technical matters to fully clarify the nature of the irregularities and identify their root cause; it has also asked the committee to recommend measures to prevent the recurrence of similar irregularities by examining the company's organization and development processes.

In the wake of the large-scale recalls that occurred in 2009, Toyota promised its customers around the world that it would not "run away, hide, or lie." Given this, we take very seriously the fact that these problems nevertheless occurred in our group. For this matter, as the chief executive officer, Toyota's President will further strive to improve the car manufacturing operations of Toyota and the group companies, while the Chairman of the Board of Toyota will lead initiatives to strengthen governance and compliance.

*On May 12, 2023, the top management of each group company gathered to discuss Toyota's commitment to facing manufacturing with sincerity and renewed our recognition of this goal. We are currently working with all of our group companies to re-examine our past governance structure, including our own, and have begun a thorough review*. We view this case not as an individual or workplace issue, but rather a company-wide issue where an individual or workplace was forced to commit a wrongdoing. Together with Daihatsu, we are committed to listening to the voices of those on the front lines and carefully responding to the situation.

9

At Toyota worksites, everyone is committed to making better cars. Toyota is a company where, when a problem occurs, everyone always stops, pursues the root cause by going and seeing the location or process where the problem exists, makes improvements, and works to prevent recurrence. This is the Toyota philosophy that has been cherished since the company's founding. We believe that there is no other way to regain the trust of our customers than for all of Toyota and its group companies to return to this philosophy once again, for each group company's top management to confront the problems at their respective workplaces, uncover them, and make improvements one by one, and continue this steady effort. The entire Toyota group will work together to regain trust of our customers as soon as possible.

(Emphasis added).

32.    The statement in ¶ 31 was materially false and misleading because it omitted that Toyota itself had submitted incorrect data during the certification process for certain vehicles, in addition to two of its subsidiaries.

33.    The statements contained in ¶¶ 20, 22, 24, 26, 29 and 31 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Toyota understated its malfeasance relating to certification of its cars and issues relating to overall legal compliance; and (2) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## THE TRUTH EMERGES

34.    On June 3, 2024, before the market opened, Toyota filed with the SEC a current report on Form 6-K. Attached to this current report was an English translation of an announcement that Toyota had filed with the Tokyo Stock Exchange on June 3, 2024. The announcement stated the following:

10

Toyota Motor Corporation (Toyota) *investigated its model certification applications as per instructions from the Ministry of Land, Infrastructure, Transport and Tourism (MLIT) on January 26 this year*. Although the investigation is still in progress, seven models, including some that have already been discontinued since 2014, were tested using methods that differed from the government standards, and we reported this to MLIT on May 31.

The model certification applications in question involve inadequate data in pedestrian and occupant protection tests for three production models (Corolla Fielder/Axio and Yaris Cross) and errors in crash tests and other test methods for four discontinued models (Crown, Isis, Sienta, and RX).

We sincerely apologize for any concern or inconvenience this may cause to our customers and stakeholders who have placed their trust in Toyota. *We take it seriously that the problem was discovered at Toyota following the recent discovery of certification issues at Hino Motors, Ltd. and Daihatsu Motor Co., Ltd. and Toyota Industries Corporation*.

Following comprehensive internal verifications on the affected vehicles, including those that are no longer in production, we can confirm that there are no performance issues that contravene laws and regulations. Therefore, there is no need to stop using the affected vehicles. However, considering these findings, we have taken action to temporarily halt shipments and sales of three models currently produced in Japan (Corolla Fielder, Corolla Axio, and Yaris Cross), effective today. We will continue to provide detailed explanations to the authorities and expedite appropriate measures, including conducting testing in the presence of witnesses.

In January this year, we announced the Toyota Group Vision, "Inventing our path forward, together." We will continue to work on making "ever-better cars" in a genba where employees have authority, which is a unique Toyota corporate culture.

*Again, we extend our sincere apologies to our customers and stakeholders*.

(Emphasis added).

---

11

35.     On June 3, 2024, *The New York Times* published an article entitled "Toyota and Other Japanese Carmakers Say They Mishandled Safety Tests." The article had a subheading which stated "[t]he Japanese authorities had told the companies to conduct investigations into their compliance with national standards for safety and other issues."

36.     It then stated the following:

Toyota Motor [. . .] and other top Japanese automakers said on Monday that internal investigations found they had mishandled vehicle testing on dozens of models over the past decade.

***Toyota said it had failed to gather proper data when doing pedestrian and occupant safety tests for three models, including its popular Yaris Cross sport utility vehicle***. [. . .]

The automakers, which the Japanese government had told to open the investigations, said the testing failures would not affect the performance or safety of their vehicles and that customers could continue to use them normally. ***Still, Toyota said it would temporarily halt shipments of three of the affected models it produces in Japan***.

The testing problems revealed Monday by Toyota [. . .] were conducted in Japan to meet the Japanese government's certification standards. The vehicles at issue were sold in Japan.

The disclosures from Toyota and others add to a lengthening tally of testing and certification problems that Japanese automakers have faced in recent months — issues that people in the industry worry could affect consumer perceptions of the quality of Japanese cars.

In December, an internal investigation at a Toyota subsidiary, Daihatsu Motor, revealed that most of its vehicles had not undergone proper collision-safety testing. The next month, another Toyota unit suspended all of its engine shipments after an investigation revealed that it had falsified figures concerning engine power.

\*          \*          \*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

But, Mr. Aoyama [a senior director at Fitch Ratings] said, "*there has long been a perception of the superior manufacturing and quality of Japanese products and with these instances of fraud appearing again and again, perceptions may be beginning to change*."

In addition to the problems Toyota found involving three current models, *it discovered errors in crash tests and other tests for four models it had discontinued*.

*        *        *

Mr. Toyoda said he was working with Toyota group companies to identify problems with internal certification processes and work structures, and had made several trips to visit their work sites himself. "We will carry out concrete improvements," he said.

*Japan's transport ministry said it would conduct an inspection at Toyota headquarters on Tuesday to follow up on the latest disclosures*.

(Emphasis added).

37.     On the same day, the Associated Press released an article entitled "Toyota apologizes for cheating on vehicle testing and halts production of three models." It stated the following:

Toyota Chairman Akio Toyoda apologized Monday for massive cheating on certification tests for seven vehicle models as the automaker suspended production of three of them.

*The wide-ranging fraudulent testing at Japan's top automaker involved the use of inadequate or outdated data in collision tests, and incorrect testing of airbag inflation and rear-seat damage in crashes. Engine power tests were also found to have been falsified*.

[Toyota] suspended production in the country of the Corolla Fielder, Corolla Axio and Yaris Cross. The deceptive tests were also found on discontinued models.

*        *        *

13

"We sincerely apologize," Toyoda told reporters, bowing deeply and holding the position for several seconds, as is customary in Japan at news conferences where companies apologize for misbehavior.

(Emphasis added).

38.    On this news, the price of Toyota American Depositary Shares ("ADSs") fell by $5.34 per ADS, or 2.45%, to close at $212.17 per ADS on June 3, 2024.

39.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

•     whether the Exchange Act was violated by Defendants' acts as alleged herein;

•     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

•     whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

•     whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

•     whether Defendants acted knowingly or recklessly in issuing false filings;

•     whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

47. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and

16

Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>**COUNT I**</u>

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
<u>**Against All Defendants**</u>

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

17

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

53. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

54. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

55. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

56.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

57.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

58.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

61.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly

19

any public statements issued by the Company which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

63.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(d)  awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: 6/24/2024                          **THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS